JOHN RAMSDELL, Executor *vs.* JOSEPH EDGARTON & others.

If a debtor, who has assigned his property in trust for the payment of such of his
    creditors as shall become parties to the assignment and thereby release their de
    mands, induces one of his creditors to become a party to the assignment, by a
    promise to pay his demand in full, though it should not be so paid from the pro-
    ceeds of the assigned property, such promise is fraudulent and void.

THIS was an action of assumpsit, commenced on the 18th of
October 1841, by Seth Ramsdell, the plaintiff's testator, to
recover damages for the alleged breach of an agreement, dated
July 2d 1834, and hereinafter set forth.  The declaration con-
tained a count for money had and received, and also a special
count on said agreement.  After the decease of said Seth, the
present plaintiff took upon himself the prosecution of the suit,
and the parties submitted the case to the court on the agreed
statement which follows:

On the 7th of June 1833, the defendants, being partners in business, under the firm of Edgarton, Priest, & Co. gave the following promissory note to the plaintiff's testator: " For value received, we promise to pay Seth Ramsdell, or order, one hundred dollars on demand with interest.  Edgarton, Priest, & Co." On the 24th of January 1834, the defendants, being insolvent, assigned their property to N. F. Cunningham & I. Longley, in trust for the benefit of such of their creditors as should become parties to the assignment.  In the instrument of assignment, the creditors who executed it fully released the defendants.

On the 2d of July 1834, and within the time prescribed by said assignment for creditors to become parties thereto, the plaintiff's testator, at the request of Edgarton, one of the defendants, became a party to the assignment, by signing and sealing the same.  And if it is competent for the plaintiff to prove the fact, it is to be taken as true that said testator executed the assignment, under the following circumstances :  He was not one of the preferred creditors, and he objected, for that reason, to signing the assignment, unless the defendants would give him a written engagement to pay his note, in case it should not be paid by the property assigned.  To this the said Edgarton agreed, and thereupon said testator signed and sealed the assignment, and said Edgarton made and delivered to him the following writing:  " Shirley, July 2d 1834.  Whereas Seth Ramsdell holds a note against us of $100, dated June 7th 1833, which note of right ought to have been amongst our preferred debts, but by mistake or accident was omitted, and placed on our other list of debts ; now therefore, if, in the disposition and division of our property by our assignees, said note should not be paid in full, we hereby promise said Ramsdell to pay him the residue and remainder of said note, with interest.

" Edgarton, Priest & Co.

" Witness :   David Livermore."

After the executing of said assignment by the defendants, they did no business as partners, except such business and action as above mentioned ; and there was no formal dissolution of the partnership, nor any advertisement of the same, except what resulted from the facts herein stated.

The said assignees have made more than one dividend amongst the defendants' creditors, but have not yet been able to close the business of the assignment. But apparently nothing will ever be received by the creditors who were not preferred; and so the said Seth Ramsdell was informed, in April 1841, by one of said assignees. Said Ramsdell then communicated this information to the defendant Edgarton, and requested payment of the note, or fulfilment of said written engagement; but said Edgarton refused. Thereupon this action was commenced.

When the aforesaid assignment was executed by said Ramsdell, and said written agreement made and delivered to him, Edgarton was the only one of the defendants who was present.

It was further agreed, by the parties, that the defendants should have the same benefit of the statute of limitations which they might have had on a trial by jury.

*B. Russell*, for the plaintiff. The written engagement of July 1834 is valid, if Edgarton had authority to make it for the firm. *Valentine* v. *Foster*, 1 Met. 520. *Willing* v. *Peters*, 12 S. & R. 177. Chit. Con. (5th Amer. ed.) 46. 1 Stephens Nisi Prius, 248, 249. And he had such authority; the assignment not being a dissolution of the partnership. *Le Page* v. *McCrea*, 1 Wend. 164. *Yale* v. *Eames*, 1 Met. 486. The statute of limitations does not bar the action on said engagement; for payment was not to be made until it should be ascertained that the note would not be satisfied by the proceeds of the assigned property. And the action was brought in a reasonable time, conformably to the rule in such cases. Chit. Con. (5th Amer. ed.) 730.

*C. H. Warren*, for the defendants. On the facts stated, the partnership was dissolved. Story on Part. §§ 307, 308, 313. *Whitman* v. *Leonard*, 3 Pick. 177. *Arnold* v. *Brown*, 24 Pick. 89. *Griswold* v. *Waddington*, 15 Johns. 57. After a dissolution, one of the firm cannot bind the others by a new obligation *National Bank* v. *Norton*, 1 Hill's (N. Y.) Rep. 572. *Mitchell* v. *Ostrom*, 2 Hill's (N. Y.) Rep. 520. *Lansing* v. *Gaine*, 2 Johns. 300. Story on Part. § 322.

This action was commenced too soon, or too late. If the cause of action on the written engagement accrued immediately, the action is barred by the statute of limitations. If no cause of action accrued till it was ascertained that the note would not be paid by the assignees, the action was prematurely brought, such fact not being previously ascertained.

These two points, however, are immaterial in this case; for the agreement of July 1834 was void, being a coercion on the debtors, and also a fraud on the other creditors.  *Cockshott* v. *Bennett*, 2 T. R. 763.  *Smith* v. *Cuff*, 6 M. & S. 160.  *Case* v. *Gerrish*, 15 Pick. 49.  *Knight* v. *Hunt*, 5 Bing. 432.  *Cullingworth* v. *Loyd*, 2 Beavan, 385.  *Coleman* v. *Waller*, 3 Younge & Jerv. 212.

SHAW, C. J.   It is very clear, we think, that this action cannot be maintained on the note of June 7th 1833, because it is barred by the statute of limitations, and probably by the release contained in the assignment.   And it seems equally clear, that assumpsit for money had and received would not lie, on the agreement of July 2d 1834, because it was a promise upon a condition or contingency ; and an action could be maintained on it, only by setting out the special promise, and averring the happening of the contingency.   But as this would only go to the form of the action, we have considered it further.

It is extremely doubtful whether Edgarton had authority, as a partner, to bind the defendants by the agreement of July 1834 : but it might require a more particular statement of facts, to decide whether the partnership still existed.   But there is another point, which we think decisive.

It is found that this memorandum, promising to pay the balance of the debt in full, as far as the assigned property should fall short, was made as an inducement to the plaintiff to sign the assignment, and that he objected to signing it till this was done. If the memorandum could be considered as made before signing the assignment, then the obligation created by it would have been discharged by the general release contained in the assignment.   But the true way is, to consider them as made at the same time, and the one act as the inducement to the other.   It

is then precisely within the principle of *Case* v. *Gerrish*, 15 Pick. 49. It was a secret agreement, made at the time of the assignment, and repugnant to its terms. By the assignment, the creditor professed to unite with other creditors in discharging the common debtor, on receiving an equal distribution of his property. This was wholly counteracted by the secret agreement. It was an unwarrantable coercion upon the debtor, and a fraud upon the other creditors, and so was void.

The cases cited for the plaintiff, where it has been held that an express promise to pay the balance of a debt discharged by an act of bankruptcy is a good foundation to support an action, have no application. They proceed on the ground that the debt thus discharged leaves a moral obligation, which is a good consideration for an express promise. The distinction is obvious. The discharge is past; and the conscious moral obligation is the real consideration for the express promise. Here the consideration for the promise is, that the creditor will execute a nominal and formal release, which may influence others, but which is intended to be counteracted by the agreement, so as to operate as no discharge of the debt.

There can be no doubt that the evidence of the extraneous agreement, made at the time of the execution of the contract, was admissible. It is true that parol evidence of what was done, at the execution of the assignment, would not be admissible to vary or alter its terms; but parol evidence is always admissible to show that an instrument was obtained by fraud or duress, and so to avoid it; and for this purpose it is admitted in the present case. Greenl. on Ev. § 284.

*Judgment for the defendants.*